IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | NO. 09-733-01 |
| | : | |
| JONATHAN COBB | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                 JULY 26, 2010

**I. INTRODUCTION**

Defendant Jonathan Cobb ("J. Cobb" or "Defendant") was charged in an Superceding Indictment with: (1) conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)B), all in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute, and aiding and abetting possession with intent to distribute, 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)B) and 18 U.S.C. § 2.

The charges arose out of an FBI investigation into J. Cobb's drug organization that revealed that he was a large-scale cocaine dealer in Chester, Pennsylvania. The investigation revealed that co-defendant David Cobb and then co-defendant Darren Macklin were involved in this drug distribution conspiracy.

On June 25, 2010, a jury convicted J. Cobb of both charges. His brother and co-defendant, David Cobb, was also

found guilty on both counts.  Darren Macklin was acquitted on all charges.  At the close of the Government's case, J. Cobb moved under Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal, which the Court denied.  J. Cobb now moves for a judgment of acquittal or for a new trial under Rules 29(c) and 33 of the Federal Rules of Criminal Procedure.  For the following reasons, the Court will deny the motion.

**II. LEGAL STANDARD**

In deciding a motion for judgment of acquittal pursuant to Rule 29, a court must view all of the evidence introduced at trial in the light most favorable to the Government and uphold the verdict so long as any rational trier of fact "'could have found proof of guilt beyond a reasonable doubt based on the available evidence.'"  United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)).  "The court is required to 'draw all reasonable inferences in favor of the jury's verdict.'"  Id. (quoting United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996)).  A court may not "usurp the role of the jury" by weighing the evidence or assessing the credibility of witnesses.  United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (citing United States v.. Jannotti, 673 F.2d 578, 581 (3d Cir. 1982) (en banc); and 2A Charles A. Wright, Federal Practice & Procedure (Crim.3d) § 467,

at 311 (2000)).  Thus, the defendant bears an "'extremely high'" burden when challenging the sufficiency of the evidence supporting a jury verdict, United States v. Iglesias, 535 F.3d 150, 155 (3d Cir. 2008) (quoting United States v. Lore, 430 F.3d 190, 203-04 (3d Cir. 2005)), and the Government "may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." Id. at 156 (citing United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006)).  A finding of insufficiency therefore "should 'be confined to cases where the prosecution's failure is clear.'" Smith, 294 F.3d at 477 (quoting United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984)).

Pursuant to Rule 33, the Court may grant a new trial upon the defendant's motion "if the interest of justice so requires."  Fed. R. Crim. P. 33.  "Whether to grant a Rule 33 motion lies within the district court's sound discretion." United States v. Ortiz, 182 F. Supp. 2d 443, 446 (E.D. Pa. 2000) (citation omitted).  A court must grant a motion for new trial if it finds that there were cumulative errors during the trial that, "'when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994) (quoting United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993)).  In evaluating a Rule 33 motion, the court does not view the evidence favorably to the Government, but rather exercises its own judgment in evaluating the Government's case.  United

States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002).  "However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted.'"  United States v. Silveus, 542 F.3d 993, 1004-05 (3d Cir. 2008) (quoting Johnson, 302 F.3d at 150).

**III. DISCUSSION**

J. Cobb challenges three pre-trial rulings of the Court to support his motion for a new trial.  Each issue will be examined in turn.

**A. Introduction of Wiretap Evidence**

**1. Background**

Before trial, the Court denied J. Cobb's motion to bar the introduction of the wiretap evidence (doc. no. 137).  The instant motion rehashes the same argument he previously argued to preclude the wiretap evidence, contending the affidavit in support of the wiretap application failed to satisfy 18 U.S.C. § 2518(1)(c)'s so-called necessity requirement.  Specifically, Defendant asserted before and argues anew that the affidavit fails to show that normal investigative techniques were warranted in investigating his cocaine enterprise.

**2. Legal Standard**

Before issuing an order authorizing a wiretap, it is required that "the judge determine[ ] on the basis of the facts submitted by the applicant that . . . normal investigative procedures have been tried and have failed[,] or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). The Third Circuit has emphasized that the statutory requirement of necessity does not mandate that the government exhaust all other investigative procedures before resorting to electronic surveillance. United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997). Instead, to authorize a wiretap, it is sufficient if there is evidence that "normal investigative techniques . . . reasonably appear to be unlikely to succeed if tried." Id. (quoting 18 U.S.C. § 2518(3)(c)).

To make such a showing, "[t]he government need only lay a 'factual predicate' sufficient to inform the [authorizing] judge why other methods of investigation are not sufficient." United States v. McGlory, 968 F.2d 309, 345 (3d Cir. 1992) (citing United States v. Armocida, 515 F.2d 29, 38 (3d Cir. 1975)). In determining whether this requirement has been satisfied, a court "may properly take into account affirmations which are founded in part upon the experience of specially trained agents." Williams, 124 F.3d at 418 (quoting United States v. Ashley, 876 F.2d 1069, 1072 (1st Cir. 1989)). In this regard, "[t]he government's showing is to be 'tested in a

- 5 -

practical and commonsense fashion.'" McGlory, 968 F.2d at 345 (quoting United States v. Vento, 533 F.2d 838, 849 (3d Cir. 1976)).

**3. Analysis**

On September 29, 2009, a District Court in the Eastern District of Pennsylvania authorized the interception of wire (telephonic) communications of J. Cobb and others, including individuals unknown at the time, occurring on cellular telephone number (484) 751-2537 (the "Defendant's telephone"). Pursuant to the court's order, the FBI intercepted telephone calls to and from the Defendant's telephone from September 29, 2009 to October 23, 2009. Several of the intercepted telephone calls involved arranging the purchase of drugs from suppliers, coordinating trips to buy drugs with co-conspirators, and/or distributing drugs to customers.

In authorizing interception of Defendant's telephone, the issuing court relied, in substantial part, on the 64-page, sworn affidavit of FBI Special Agent Luke Church (the "affidavit"). The affidavit contains thirteen subject matter headings, including a section entitled "Inadequacy of Normal Investigative Procedures" (the "Necessity Section"). The Necessity Section is comprised of eighteen paragraphs and spans more than eight pages. The Necessity Section explains in detail why interception of wire communications over the [Defendant]'s

telephone is:

> the only available technique with a reasonable likelihood of identifying the full scope of th[e] conspiracy, including the identification of suspected stash locations, distribution points, assets acquired with drug profits and/or used to facilitate the conspiracy, sources of supply, the amounts of controlled substances being distributed, and currently unknown co-conspirators.

(Aff. ¶ 165.)[1]

---

[1] The affidavit further explains that the wiretap (unlike other investigative techniques, including those that had been tried and failed and those that had not been tried due to their low likelihood of success) would uniquely assist law enforcement to detect the full scope, nature, and capabilities of the defendant's drug enterprise because: (1) use of a wiretap was the only means available to law enforcement to learn who the defendant was distributing his drugs to (Aff. ¶ 166); (2) only Confidential Informant ("CI") #2 – notwithstanding the investigation's use of five CIs to obtain information about Defendant's drug dealing – was "in a position to make controlled purchases of cocaine from" Defendant (Aff. ¶ 167); (3) CI #2 was unable to make controlled purchases from anyone other than Defendant, and therefore law enforcement had no means of obtaining information respecting the Defendant's drug suppliers or customers without intercepting telephone calls (id.; Aff. ¶ 170); (4) CI #2 was unable to purchase more than ounce quantities of cocaine from Defendant, and law enforcement believed Defendant was buying and selling kilogram quantities of cocaine (Aff. ¶ 167); (5) Defendant was unwilling to transact drug deals with people he did not know, thus infiltration of the conspiracy by an undercover officer was untenable (Aff. ¶¶ 168 - 169); (6) the consensually recorded telephone conversations between CI #2 and Defendant could not provide information with respect to the "breadth of this organization, the activities of the organization, or the identities of its membership" (Aff. ¶ 170); (7) effective physical surveillance was completely frustrated due to Defendant's counter surveillance techniques, including identifying cars that drove down Norris Street, the "nerve center" of the Defendant's drug operation (Aff. ¶¶ 172 - 173); (8) although applying for installation of a "pole camera" on Norris Street was under consideration when the affidavit was sworn to, without intercepted telephone conversations to provide context for the images captured by the camera, the images

Here, the averments in the affidavit provide substantial basis for the conclusion that the Government satisfied the requirements of 18 U.S.C. § 2518(3)(c). First, the investigative techniques employed before interception of Defendant's telephone calls here "failed to determine the scope of the conspiracy and to identify the participants." Armocida, 515 F.2d at 38 (rejecting defendant's argument that the application failed to establish the need for a wiretap because "surveillance was too easily noticeable and could jeopardize the investigation" and "a search warrant was unlikely to reveal either the identities of those believed involved in the conspiracy to distribute heroin or the source of the heroin."). Specifically, the affidavit here explains: (1) use of a wiretap was the only means available to law enforcement to learn who Defendant was distributing his drugs to (Aff. ¶ 166); (2) CI #2

---

themselves would have no independent value (Aff. ¶ 172); (9) surveillance efforts had been thwarted and an application for installation of a Global Positioning System ("GPS") in Defendant's car was useless due to Defendant's use of borrowed and rented cars to conduct drug deals (Aff. ¶ 173); (10) subpoenaing witnesses to the grand jury prematurely would alert the targets of the investigation to the FBI's efforts to dismantle the organization (Aff. ¶ 177); (11) pen registers and telephone records – although useful in identifying subscriber information and the duration of telephone calls – were not helpful in revealing the substance and nature of the telephone calls (Aff. ¶ 179); and (12) the execution of search warrants would have caused the targets of the investigation to become "more circumspect in their dealings, thereby making detection of their activities and the gathering of additional leads and evidence practically impossible" (Aff. ¶ 180).

was unable to make controlled purchases from anyone other than Defendant, leaving unidentified Defendant's drug suppliers or customers absent interception (Aff. ¶ 170); and (3) the consensually recorded telephone conversations between CI #2 and Defendant could not provide information with respect to the "breadth of this organization, the activities of the organization, or the identities of its membership" (Aff. ¶ 170).

Second, the utility of CIs was limited. Vento, 533 F.2d at 850 (rejecting defendant's contention that an affidavit failed to demonstrate the need for electronic surveillance because "[w]itnesses who had past experience with [the defendant] were of necessarily limited utility; prolonged physical surveillance was not possible [because the defendant was reputed to be suspicious]; and search warrants would provide only a portion of the necessary information.") Specifically, here, the affidavit states: (1) only CI #2 could make controlled purchases of cocaine from Defendant; (2) CI #2 could not purchase more than relatively small amounts of cocaine from Defendant; (3) CI #3 is in jail and thus unable to advance the investigation proactively; (4) "CI #4 and CI #5 both have had very limited dealings with [Defendant] and are not in a position to be brought into his inner circle"; and (5) subpoenaing potential witnesses to the grand jury would tip off the targets of the investigation (Aff. ¶¶ 167, 171, 177).

Third, Defendant here, like the defendants in <u>Williams</u>, was "highly suspicious of unfamiliar persons," thus making use of another confidential informant or an undercover law enforcement official unfruitful.  See <u>Williams</u>, 124 F.3d at 419 (concluding the affidavit supporting the application for video surveillance inside the defendants' gambling hall satisfied 18 U.S.C. § 2518(3)(c) based on the affidavit's inclusion of averments that (1) "execution of a search warrant was unlikely to succeed because it would reveal the facts of the investigation to the targets"; (2) "since organizations such as the one involved in this case are highly suspicious of unfamiliar persons, the use of another confidential informant would not have been fruitful"; and (3) "the organization transacted its business in private and via cellular phones, making it difficult to investigate the organization and learn the identities of upper echelon figures.") Here, the affidavit explains that Defendant was unwilling to conduct drug deals with anyone he did not know; thus, an undercover officer would not have been able to purchase cocaine from or
sell cocaine to him. (Aff. ¶¶ 168 - 169).

Fourth, here as in <u>Armocida</u>, <u>Vento</u>, and <u>Williams</u>, the need for electronic surveillance was a demonstrated necessity based on the ineffectiveness of physical surveillance.  See <u>Armocida</u>, 515 F.2d at 38; see also <u>Vento</u>, 533 F.2d at 850;

Williams, 124 F.3d at 419.  The affidavit makes clear that effective physical surveillance was impossible due to Defendant's counter surveillance techniques, and that installation of a GPS in Defendant's car was useless because he borrowed and rented cars to transact drug deals. (Aff. ¶¶ 172 - 173).

Fifth, here as in Williams, the affidavit explains that execution of a search warrant would have caused Defendant to become more cautious in his dealings, thereby frustrating the investigation. (Aff. ¶ 180); see 124 F.3d at 419 ("[E]xecution of a search warrant was unlikely to succeed because it would reveal the facts of the investigation to the targets.").

Moreover, the affidavit here goes beyond the bases provided in the affidavits found satisfactory in Armocida, Vento, and Williams in explaining the investigative need for interception of Defendant's telephone calls.  Specifically, the affidavit states: (1) strategic installation of a pole camera could provide images relevant to the criminal investigation, but without oral communication to support the images the camera footage would have little meaning; and (2) a pen register and telephone records would capture only the subscriber information and duration of telephone calls rather than the content. (Aff. ¶¶ 172, 179).

Thus, the affidavit sets forth, among other things, (1) the inability of a CI to gather additional information, (2)

Defendant's use of evasive tactics, and (3) the difficulty in penetrating Defendant's circle of drug-trafficking confederates. Accordingly, the Court did not err in denying the motion to bar the wiretap evidence.

### B. Introduction of Prior Criminal Offense Evidence

#### 1. Background

Before trial, the Court denied in part and granted in part the Government's motion in limine to introduce J. Cobb's prior cocaine convictions (doc. no. 138). The Court denied to the motion as to his conviction from 1991. The Court granted to motion as to his conviction from 2006; which stemmed from J. Cobb throwing a plastic bag of cocaine out the window of the car he was driving while being chased by police on the highway. J. Cobb contends that, in granting the Government's motion, the Court "failed to adequately weigh the probative value of this evidence against its prejudicial effect . . . ." (Def.'s Mot. at 3.)

#### 2. Legal Standard

Federal Rule of Evidence 404(b), which governs the admission of evidence of prior crimes, wrongs, or acts, provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Fed. R. Evid. 404(b). If evidence is offered for a proper

purpose under Fed. R. Evid. 404(b), it is subject only to the limitations of Fed. R. Evid. 402 and 403.  United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988).  Moreover, it is important to note that Rule 404(b) is a rule of inclusion rather than exclusion.  See United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994).

In determining whether evidence of a defendant's prior crimes, wrongs, or bad acts is admissible, a court engages in a four-part analysis.  Huddleston v. United States, 485 U.S. 681, 691-92 (1988); United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992).  First, the court must determine whether the evidence is being offered for a proper purpose under Fed. R. Evid. 404(b).  Id. at 691.  Second, the court must determine whether the evidence is relevant under Fed. R. Evid. 402.  Id.  Third, the court must determine whether the probative value of the evidence is substantially outweighed by its risk of unfair prejudice as provided by Fed. R. Evid. 403.  Id.  And finally, if the evidence is deemed admissible, upon request, the court must "instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted."  Id. at 691-92.  See also United States v. Sriyuth, 98 F.3d 739, 745-46 (3d Cir. 1996) (articulating this four-part analysis).

### 3. Analysis

J. Cobb does not contest the Court's analysis of the

first two prongs of the Rule 404(b) analysis.  Thus, the Court will only note that it previously found: (1) the Government's articulated chain of inferences offered in the case supports the inference that J. Cobb's possession of the drugs was knowing and not a mistake, thus the evidence was offered for a proper purpose; and (2) the evidence that J. Cobb had been convicted of distribution and possession of cocaine made his knowledge of the presence of the cocaine more probable than it would have been without the evidence, as it indicated that he had knowledge of drugs and drug distribution, and thus that it was less likely that they were simply in the wrong place at the wrong time.  J. Cobb's knowledge is a contested issue because the drugs were not found in the automobile driven by J. Cobb, but were found in the automobile drive by co-defendant David Cobb.  Therefore, the prior convictions are relevant and an issue in the case.

The Court then duly considered the probative value of his prior convictions.  The Court found the 1991 conviction was too remote and, therefore, of little probative value.  Accordingly, the Court denied the Government's motion as to the 1991 offense.  However, the Court found that, given the purpose for which it was admitted,  knowledge and familiarity with cocaine, the 2006 offense was highly probative because: (1) the narcotic involved (cocaine); (2) similarity of the crimes (possession of cocaine); and (3) the prior conviction was only

four years old.

The Court additionally noted that it would – as it in fact did at trial – "diminish any prejudicial effect by instructing the jury that it may consider the[] prior act[] only for [its] nonpropensity purposes." (Court Order of June 15, 2010, doc. no. 138) (citing Virgin Islands v. Edwards, 903 F.2d 267, 270 (3d Cir. 1990). Accordingly, the Court previously and throughly considered the balancing of J. Cobb's 2006 drug conviction against Federal Rule of Evidence 403's unfair prejudice standard and did not err in admitting the evidence.

**C. Denial of Motion to Suppress**

**1. Background**

Before trial, the Court denied David Cobb's motion to suppress the physical evidence (doc. no. 131).[2] J. Cobb now argues that he should be granted a new trial because the Court denied David Cobb's motion to suppress physical evidence.

**2. Legal Standard**

The automobile exception to the warrant requirement permits law enforcement officers to seize and search an

---

[2] The Court notes that J. Cobb did not formally join the motion to suppress. (Hrg. Tr. at 48:10-15 dated 6/8/2010) ("MR CANNON [J. Cobb's counsel]: I would like to ask some questions . . . but I must admit that I did not join in the motion to suppress the physical evidence . . . ."). Thus, the Government argues J. Cobb cannot properly attack the Court's ruling on this motion. Regardless, the Court will analyze the merits of his argument.

automobile without a warrant if "probable cause exists to believe it contains contraband." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). Under this exception, "where there [is] probable cause to search a vehicle, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." Maryland v. Dyson, 527 U.S. 465, 467 (1999) (internal quotations and citation omitted). The exception "allows warrantless searches of any part of a vehicle that may conceal evidence . . . where there is probable cause to believe that the vehicle contains evidence of a crime." Karnes v. Skrutski, 62 F.3d 485, 498 (3d Cir. 1995) (quoting United States v. McGlory, 968 F.2d 309, 343 (3d Cir. 1992)); see also United States v. Salmon, 944 F.2d 1106, 1123 (3d Cir. 1991) (automobile exception to warrant requirement permits warrantless searches of any part of vehicle, including containers, if there is probable cause to believe the vehicle contains contraband).

Moreover, probable cause to conduct a search exists "when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). The Court must consider the "cumulative weight of the information set forth by the investigating officer in

connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experience." United States v. Arvizu, 534 U.S. 266, 275 (2002).

### 3. Analysis

Here, there was probable cause for law enforcement officials to believe that cocaine was in either of the cars the co-defendants were driving on October 20, 2009. First, law enforcement officers heard several conversations between J. Cobb and his cocaine supplier in North Philadelphia (the "North Philadelphia Supplier"), discussing whether the supplier had "anything broken down." After learning that the North Philadelphia Supplier did have something "broken down," J. Cobb asked "what number?". During this same conversation, J. Cobb told the North Philadelphia Supplier that he had "to go back where I was . . . the other day," referring to a drug transaction he had arranged via telephone on October 16. Law enforcement officials also overheard calls between J. Cobb and the North Philadelphia Supplier on October 16, which were similar to the calls they heard on October 20. Based on these conversations and other information obtained during their investigation, law enforcement officers concluded that J. Cobb's reference to something "broken down" referred to a quantity of cocaine and his reference to the "number" referred to the price for the drugs.

Before stopping David Cobb's car and seizing the cocaine, law enforcement officials also heard a conversation between the North Philadelphia Supplier and J. Cobb, confirming that J. Cobb was going to meet him on October 20.  Law enforcement officers also heard J. Cobb tell the North Philadelphia Supplier that he would meet him but was "waiting for [his] brother," David Cobb.  Immediately after that conversation, law enforcement officers heard J. Cobb call David Cobb and explain that the North Philadelphia Supplier "keeps calling . . . asking are we coming."  Law enforcement officers overheard David Cobb tell J. Cobb that he was "ready" to go.  Then, law enforcement officers heard conversations between J. Cobb and David Cobb and Darren Macklin, coordinating the trip to meet the North Philadelphia Supplier.

Based on what they heard during the intercepted calls, law enforcement officers set up surveillance in the area where Darren Macklin told David Cobb that he and J. Cobb were.  A surveillance officer saw the J. Cobb leave that location in a white Kia, and saw David Cobb and Darren Macklin leave the same location in a white Impala.  Officers tried but failed to follow the cars as they got onto highway I-95.  Cell site information and monitored telephone conversations between J. Cobb and David Cobb over the next several minutes established that the J. Cobb, David Cobb, and Darren Macklin were traveling northbound on I-95

toward Philadelphia.  Shortly thereafter, conversations law enforcement officers overheard between J. Cobb and the Supplier established that J. Cobb, David Cobb, and Darren Macklin had arrived in the two cars "back to back."

Based on the foregoing information, when law enforcement officers saw the Kia and the Impala following one another on I-95 South back towards Chester several minutes after hearing the above conversations, they had probable cause to believe: (1) J. Cobb had been talking to a drug supplier in North Philadelphia; (2) J. Cobb had negotiated a price for the drugs; (3) J. Cobb, David Cobb, and Darren Macklin had coordinated a trip from Chester to North Philadelphia to purchase the drugs; (3) J. Cobb, David Cobb, and Darren Macklin traveled in two cars from Chester to North Philadelphia to buy the drugs; (4) J. Cobb, David Cobb, and Darren Macklin had arrived at the Supplier's place of business and consummated the purchase; and (5) after obtaining the drugs they had agreed to purchase from the North Philadelphia Supplier, J. Cobb, David Cobb, and Darren Macklin were traveling back to Chester with the drugs in one or both of the cars.

As the Third Circuit has made clear, the automobile exception "allows warrantless searches of any part of a vehicle that may conceal evidence . . . where there is probable cause to believe that the vehicle contains evidence of a crime."  Karnes,

62 F.3d at 498. Here, law enforcement officials had probable cause to believe that they would find illegal narcotics in either of the vehicles and properly conducted a warrantless search. Accordingly, J. Cobb's argument for a new trial based on the Court's denial of David Cobb's suppression motion is denied.

### D. Sufficiency of the Evidence

Defendant's arguments, insofar as they claim to rest on Rule 29, fail because they do not concern the sufficiency of the evidence adduced against him at trial. He fails to contend at any point that the evidence against him was insufficient. Rather, ignoring the Rule 29 standard, he argues the Court should enter a post-verdict judgment of acquittal based on his unpersuasive claims that the Court erred in ruling on the pre-trial motions discussed above. Accordingly, J. Cobb's motion for acquittal must be denied.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion will be denied. An appropriate order follows.