## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| United States, | : | |
| | : | |
| v. | : | Crim. Action No. 09-733-01 |
| | : | |
| Jonathan Cobb | : | Civil Action No. 13-4754 |

### PETITIONER JONATHAN COBB'S SUPPLEMENTAL BRIEF IN SUPPORT OF HABEAS PETITION PURSUANT TO 28 U.S.C. § 2255

The issue here is whether trial counsel provided ineffective assistance of counsel by failing to adequately explain to Mr. Cobb the option of entering an open plea of guilty. Mr. Cobb has proven by a preponderance of the evidence that his trial counsel never explained the option of entering an open plea and that he could have gotten three levels off his offense level for pleading guilty, and moreover, trial counsel grossly miscalculated Mr. Cobb's sentencing exposure, and therefore, any plea decision that Mr. Cobb made could not have been knowing and voluntary. As a result of his trial counsel's deficient performance, he suffered prejudice by facing a significantly increased sentencing exposure by proceeding to trial. Accordingly, this Court should grant Mr. Cobb's petition pursuant to 28 U.S.C. § 2255 and grant relief in the form of vacating the conviction and sentence and remanding so as to put Mr. Cobb in the same position he would have been had his trial counsel not rendered unconstitutionally infirm advice.

## I. Factual and Procedural Background

After a week-long trial, Jonathan Cobb was convicted by a jury on June 28, 2010 on one count of conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B), and one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), and aiding and abetting in violation of 18 U.S.C. § 2. At sentencing, the mandatory minimum was ten years, and his guideline range was 130 to 162 months. (PSR, ¶ 90).[1] This Court granted the government's upward departure motion, and on November 3, 2010, sentenced Mr. Cobb to 288 months of imprisonment, eight years of supervised release, and a $2,500 fine.

Mr. Cobb appealed to the United States Court of Appeals for the Third Circuit, alleging that the district court erred by: (1) admitting conversations captured on an illegal wiretap; (2) failing to exclude evidence seized during the warrantless search of David Cobb's vehicle; (3) allowing inappropriate expert testimony under Federal Rule of Evidence 702; and (4) imposing an upward variance at his sentencing that rendered his sentence unreasonable. The Third Circuit affirmed the district court's rulings in all respects on May 25, 2012. United States v. Cobb, 483 F. App'x 719, 721 (3d Cir.) cert. denied, 133 S. Ct. 457 (2012).

---

[1] The Presentence Investigation Report, along with the transcript of the evidentiary hearing held on November 7, 2014, and the signed stipulation referred to here as Exhibit A have been sent in hard copy under separate cover to the Court's chambers. They have not been filed electronically.

Mr. Cobb filed a timely pro se petition to vacate his sentence pursuant to 28 U.S.C. § 2255. Ground Three of that petition claimed that Mr. Cobb's trial counsel was ineffective for failing to fully advise Mr. Cobb of the advantages and disadvantages of pleading guilty versus going to trial. In that petition, Mr. Cobb stated that had his trial counsel properly explained the advantages and disadvantages of pleading guilty and explained that he could get two to three levels off his base offense level for acceptance of responsibility, he would have pled guilty instead of going to trial. (Pro Se Petition and Brief, Jan. 8, 2014, ECF No. 227, at 11-13).

In ruling on Mr. Cobb's habeas motion, this Court denied the petition on all grounds except one: whether trial counsel was ineffective for failing to explain the consequences of an open guilty plea, rather than a cooperation guilty plea. On this point, this Court appointed the undersigned to represent Mr. Cobb and held an evidentiary hearing on November 7, 2014, at which Mr. Cobb and his former trial counsel, William Cannon, both testified.

As detailed more fully below, trial counsel testified that he did advise Mr. Cobb of the option of pleading open, including that Mr. Cobb would receive three levels off. (Tr. Hrg. 11/7/14, at 5-9). Mr. Cobb testified that trial counsel never advised him as to the benefits of pleading open and instead focused exclusively on pleading with cooperation, which Mr. Cobb had said consistently he was unwilling to do. (Tr. Hrg. 11/7/14, at 59-64). Two letters were introduced that documented the discussions

between trial counsel and Mr. Cobb; they are discussed more fully below. (Gov't Ex. 2; Def. Ex. 2).

Also at the hearing it came to light that trial counsel had grossly miscalculated Mr. Cobb's sentencing exposure, including falsely telling Mr. Cobb that he was a career offender. (Tr. Hrg. 11/7/14, at 10-56). Because of his assumption that Mr. Cobb was a career offender, trial counsel informed Mr. Cobb that the offense level increased from 26 to 37, and the criminal history category jumped from a V to a VI. (Tr. Hrg. 11/7/14, at 12). Trial counsel testified at the hearing that he realized this mistake sometime before trial and conveyed to Mr. Cobb that he was not, in fact, a career offender subject to enhanced penalties. (Tr. Hrg. 11/7/14, at 10-13, 15).

However, after the hearing had concluded, trial counsel wrote to the government and said that he had been wrong when he testified at the hearing, and that he did not learn about Mr. Cobb's true career offender status until he received the PSR. The government and Mr. Cobb have now stipulated to this fact; that stipulation is attached as Exhibit A and reads in pertinent part as follows:

> [T]he record from the hearing on November 7, 2014, should be supplemented with the following statement made by William Cannon, Esquire on November 14, 2014:
>
> The sub issue that evolved at the hearing was whether, going into trial the defendant believed himself to be a career offender with an offense level of 37 and a criminal history of 6 (360 to life) or a 28/5 (130-162 months). Based on Cobb's 3 prior felony convictions (2 armed robberies and possession with intent to deliver) both Larry Leverett and I were both of a mind that he was a career offender. Relying on my letter to Cobb of June 1, 2010 it is clear that I was still

under that impression as of that date. Nevertheless at the hearing I testified that prior to the commencement of trial on or about June 18, 2010 (a 7 day trial with a jury verdict on June 25, 2010) that I had come to realize that he was not a career offender and had communicated that to him in one or more of the several conferences we had immediately before trial. I so testified because while trying to recall events that had taken place over 4 years earlier that is what I believed. I was sworn to tell the truth at the hearing and had no incentive to try to offer anything else.

When I saw that this litigation had not been concluded I was prompted to call Larry Leverett. We spoke and it was his recollection that he did not realize that Cobb was not a career offender until the PSR issued (post trial, of course). If his recollection is correct then there is little doubt that I too believed Cobb to be a career offender entering into trial in which case Cobb would have shared that belief based on my advice. At any rate if Cobb testified at the hearing that he believed himself to be a career offender entering into trial then he is probably correct for whatever impact that testimony matters in resolving the 2255. As an officer of the Court I thought it necessary to bring all of this to your attention.

(Ex. A, Stipulation).

At the conclusion of the hearing, this Court characterized the issues to be argued

as follows:

The question it seems to me is going to be assuming that we credit Mr. Cobb's testimony and do not credit Mr. Cannon's testimony, whether or not that really goes to the question under <u>Booth</u> which is was he told of the option to plead openly in this case. If you credit Mr. Cobb's testimony and you discredit Mr. Cannon's testimony, it appears that Mr. Cannon may not have given him the correct advice as to what the sentencing guidelines would warrant in this case and how that interacted with the requirement for a mandatory minimum.

In my mind there are two questions. Number one, does that fall within the 2255 claim, or is that outside the 2255 claim. For example, is the issue then whether or not the advice that Mr. Cannon gave fell below the standard for professional competence and, number two, was he prejudiced by that.

(Tr. Hrg. 11/7/14, at 72-73).

## II.    Argument

### A. Trial Counsel's Performance was Constitutionally Deficient Because He Did Not Explain the Relevant Risks and Benefits of Entering an Open Guilty Plea and Grossly Misinformed Mr. Cobb About His Sentencing Exposure.

The Sixth Amendment right to the effective assistance of counsel applies to the plea stage of a criminal proceeding. Missouri v. Frye, -- U.S. --, 132 S.Ct. 1399, 1405 (2012); Lafler v. Cooper, -- U.S. --, 132 S. Ct. 1376, 1385 (2012) ("The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice."). That right includes being informed of all relevant considerations in deciding whether to proceed to trial or plead guilty, whether via a plea agreement or an open plea. United States v. Booth, 432 F.3d 542, 549 (3d Cir. 2005); United States v. Day, 969 F.2d 39, 44 (3d Cir. 1992). The Strickland test applies to advice given by counsel in the context of guilty plea discussions. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Day, 969 F.2d at 42. Under that test, a defendant must show: (1) that his attorney's performance was unreasonable under prevailing professional standards; and unless prejudice is presumed, (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." Day, 969 F.2d at 42 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)); see also Booth, 432 F.3d at 546. Mr. Cobb has the burden of proving ineffective assistance of counsel by a

preponderance of the evidence. <u>See United States v. Cabiness</u>, 278 F. Supp. 2d 478, 485 (E.D. Pa. 2003).

Recognizing these standards, this Court granted an evidentiary hearing to explore to what extent, if any, trial counsel had fulfilled his constitutional duty to explain all relevant considerations of an open guilty plea, and whether Mr. Cobb was prejudiced. At that hearing held on November 7, 2014, two issues emerged. First, although trial counsel testified that he explained to Mr. Cobb the risks and benefits of entering an open guilty plea, there is little corroborating evidence that he did so, and Mr. Cobb testified, directly contrary to trial counsel, that the only thing that trial counsel ever pressed him to do was to plead guilty with cooperation. Mr. Cobb had consistently maintained that he did not want to incriminate any co-defendants, one of whom was his brother. The only corroborating evidence of trial counsel's plea discussions with Mr. Cobb fully supports Mr. Cobb's testimony on this point, as detailed below, and not the testimony of trial counsel.

Second, the evidence elicited at the hearing showed that trial counsel consistently misinformed Mr. Cobb throughout the plea process about his sentencing exposure by grossly inflating his guideline range based on a flawed conclusion that Mr. Cobb was a career offender. The undisputed evidence before this Court shows that trial counsel maintained throughout the plea stage that Mr. Cobb faced a sentencing range of 360 months to life, when in fact Mr. Cobb's true guideline range was 130 to 162 months

without a plea, a fact that trial counsel did not become aware of until he received the Presentence Investigation Report after Mr. Cobb's convictions. (<u>See</u> Ex. A, Stipulation). Thus, even if this Court credits trial counsel's testimony that he explained to Mr. Cobb the option of entering an open guilty plea, the undisputed evidence shows that there was no possible way that Mr. Cobb could have made a knowing and voluntary decision about whether to plead guilty because of the substantial disparity in the sentencing risk.

As explained below, trial counsel's actions in misinforming Mr. Cobb about the risks and benefits of entering an open guilty plea fell unreasonably below professional standards and caused substantial prejudice to Mr. Cobb.

1. **Trial Counsel's Performance Was Deficient Because He Focused Exclusively on Pleading Guilty with Cooperation and Did Not Explain the Third Option of Entering an Open Plea**.

Through government questioning, trial counsel testified that prior to trial: (1) he discussed three options with Mr. Cobb, which were either simply to plead guilty or to plead guilty with cooperation, or to go to trial; (2) he discussed the sentencing guidelines with Mr. Cobb in the context of explaining the benefits of pleading guilty, with or without cooperation; and (3) he discussed the likelihood of Mr. Cobb receiving three levels off for acceptance of responsibility and for early notification to the government of the intent to go to trial; he testified that the prosecutor was prepared to give Mr. Cobb those three levels off. (Tr. Hrg. 11/7/14, at 5).

In support of this testimony, the government introduced a June 1, 2010, letter from trial counsel to Mr. Cobb that was written two or three weeks prior to the trial, after this Court had denied Mr. Cobb's pretrial suppression motions. Trial counsel enclosed with the letter the government's trial memorandum which set forth the government's strong case against Mr. Cobb, and counsel explained the adverse effect that certain rulings would have on Mr. Cobb's case. That letter contained one sentence that the government contends proves that trial counsel adequately explained to Mr. Cobb the risks and benefits of pleading open: "As you know, I am prepared to try this case if that must be done, but I have consistently urged you to consider either simply pleading guilty or pleading guilty with continued cooperation with the government. In our last conversation you made clear that you had no interest in continued cooperation. I understand that. However, I believe it to be the wrong decision." (Tr. Hrg. 11/7/14, at 8-9; Gov't. Ex. 2).

Mr. Cobb, however, testified that he did not recall trial counsel discussing with him the option of pleading guilty and getting three levels off, (Tr. Hrg. 11/7/14, at 59), and that he "didn't really understand" the sentence in the June 1, 2010, letter in which trial counsel mentioned an open guilty plea. (Tr. Hrg. 11/7/14, at 60). He testified that "[t]he only thing he urged me to do was plead guilty with continued cooperation. That is all he kept telling me from day one, plead guilty, plead guilty with continued

cooperation. You know, as far as him mentioning an open plea, I can't recall that." (Tr. Hrg., 11/7/14, at 60).

In fact, two letters from trial counsel to Mr. Cobb that were introduced at the hearing – which are the only paper record of the plea discussions between trial counsel and Mr. Cobb – fully support Mr. Cobb's testimony that the only thing that trial counsel counseled Mr. Cobb on was pleading guilty with cooperation. In the first letter, dated May 5, 2010, (Def. Ex. 2), which was approximately a month and a half before trial and before this Court had ruled on Mr. Cobb's suppression motions, trial counsel explained what would happen if the court granted those motions versus what would happen if the motions were denied: "If Judge Robreno denies our Motion then obviously the government will be able to play all of your intercepted conversations and your chances of success at a trial will be almost non-existent." (Def. Ex. 2). Counsel then outlined Mr. Cobb's sentencing exposure (which was significantly flawed, as detailed below), and concluded:

> Given all these factors, and given the fact that our trial is scheduled June 15, 2010 *you need to think seriously about folding your cards and cooperating with the government*. That would earn for you a Departure Motion which would take the mandatory sentence off the table and permit Judge Robreno to ignore the otherwise applicable guideline sentence.

(Def. Ex. 2.) (emphasis added).

Significantly, although trial counsel took the time to detail the benefits of pleading guilty with cooperation, nowhere in this letter does counsel explain the option

of pleading open or that Mr. Cobb would receive three levels off his offense level for pleading open. The sole advice regarding a plea that this letter provides is that Mr. Cobb should seriously consider cooperating.

And the same is true for the only other paper evidence of the plea discussions between trial counsel and Mr. Cobb. In the June 1, 2010, letter, the one reference to an open plea is buried in the middle of a paragraph that otherwise focuses on Mr. Cobb's decision not to cooperate: "As you know, I am prepared to try this case if that must be done, but I have consistently urged you to consider either simply pleading guilty or pleading guilty with continued cooperation with the government. *In our last conversation you made clear that you had no interest in continued cooperation. I understand that. However, I believe it to be the wrong decision.*" (Gov't Ex. 2) (emphasis added).

In determining whether a preponderance of this evidence shows that trial counsel adequately explained the option of entering an open guilty plea, this Court can be guided not only by a common sense understanding of how Mr. Cobb would have understood those two letters, but also by a presumption – borrowed from the statutory construction principle of *expressio unius est exclusio alterius* (the inclusion of one is the exclusion of others)[2] – that because trial counsel took the time to document the specific

---

[2] "*Expressio unius est exclusio alterius* is a Latin maxim which means 'to express one is to exclude the other.' As with all easy answers, it should be taken with a grain of salt—or even better, with a grain of common sense." <u>Abdullah v. Am. Airlines, Inc.</u>, 181 F.3d 363, 372 (3d Cir. 1999).

benefits of pleading with cooperation, the absence of any written record that he also explained the benefits of pleading open leads to the conclusion that no such explanation was given. (See Tr. Hrg. 11/7/14, at 48-49).

In determining whether to credit trial counsel's testimony or Mr. Cobb's testimony, this Court can also take into account the after-the-fact change of testimony by trial counsel reflected in the attached stipulation. If trial counsel had been mistaken when testifying as to when he learned that Mr. Cobb was not a career offender and when he discussed that fact with Mr. Cobb, a reasonable conclusion to draw is that he may also have been mistaken as to whether he discussed the benefits of an open plea with Mr. Cobb. (See Tr. Hrg. 11/7/14, at 55).

In Booth, the petitioner similarly argued that even though his counsel presented cooperation plea offers to him, counsel performed unreasonably by failing to explain the "third option" of entering an open plea and receiving a three-level reduction in his offense level for acceptance of responsibility. Booth, 432 F.3d at 549. The Third Circuit concluded that such failure would constitute ineffective assistance of counsel if proven through facts presented at an evidentiary hearing, and it found two facts to be "key" to the determination: (1) the evidence against the petitioner was "overwhelming"; and (2) the petitioner did not want to enter into a plea agreement because he did not want to incriminate a possible co-defendant. Id. Those facts were key because when faced with overwhelming evidence of guilt and a refusal of a defendant to cooperate, the third

option of an open plea plainly comes to the forefront as the most useful choice. In that circumstance, it is clearly unreasonable for a lawyer to fail to explain that third option.

In Mr. Cobb's case, there is no dispute that the two facts that the <u>Booth</u> court found key to the ineffectiveness inquiry – overwhelming evidence of guilt and a defendant's refusal to cooperate – were present here as well. Given those undisputed facts, trial counsel's constitutional duty to present the third option of an open plea became paramount. And taking into account the contradictory testimony of trial counsel and Mr. Cobb, that the only paper evidence supporting that testimony overwhelmingly supports Mr. Cobb's testimony and renders trial counsel's testimony not credible, and the fact that trial counsel has already admitted that he was wrong about certain facts he testified to at the hearing, the only conclusion that can be drawn is that Mr. Cobb has proven by a preponderance of the evidence that trial counsel failed to explain the risks and benefits of entering an open guilty plea. And as explained in <u>Booth</u>, that failure constitutes deficient performance under the first prong for ineffective assistance of counsel.

But even if this Court finds trial counsel's testimony credible and concludes that trial counsel informed Mr. Cobb about the option of an open guilty plea and that Mr. Cobb would receive three levels off his offense level for acceptance of responsibility, the evidence elicited at the hearing shows that the misinformation that trial counsel gave Mr. Cobb about his sentencing exposure was "so insufficient that it undermined [Mr.

Cobb's] ability to make an intelligent decision about whether to accept the [plea] offer." <u>Booth</u>, 432 F.3d at 549 (quoting <u>Day</u>, 969 F.2d at 43-33). Thus, as explained in more detail below, counsel's performance in advising Mr. Cobb about his sentencing risk was constitutionally deficient, even if it is found that trial counsel told Mr. Cobb about the third option of an open plea.

2. **Even if Mr. Cobb Understood that He Could Enter an Open Guilty Plea, His Decision Regarding the Plea Was Not Knowing and Voluntary Because He Was Told He Faced a Significantly Overinflated Sentencing Exposure Due to His Trial Counsel Mistakenly Labeling Him a Career Offender.**

It is well-established that a defendant has the right to make a reasonably informed decision regarding whether to plead guilty or proceed to trial, and that a petitioner states a claim for ineffective assistance under the Sixth Amendment where the information that a lawyer provided about the defendant's sentencing exposure was so incorrect that it undermined the defendant's ability to make an intelligent decision about whether to accept the offer. <u>Day</u>, 969 F.2d at 43 (citing <u>Hill</u>, 474 U.S. at 56-57 (voluntariness of guilty plea depends on adequacy of counsel's advice); <u>Von Moltke v. Gillies</u>, 332 U.S. 708 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."). "Knowledge of the comparative sentence exposure between standing trial and

accepting a plea offer will often be crucial to the decision whether to plead guilty." <u>Day</u>, 969 F.2d at 43.

In <u>Day</u>, which like <u>Booth</u> is strikingly similar to Mr. Cobb's case, the petitioner alleged that his trial counsel failed to explain to him that he would be classified as a career offender, thereby misrepresenting to him that he faced a maximum of eleven years in prison. 969 F.2d at 42. The actual statutory maximum was 25 years, and the actual sentencing range, based on the career offender enhancements, was 262 to 327 months; the court sentenced him to the bottom of that range, 262 months (21 years, ten months). <u>Id.</u> at 41. Trial counsel had communicated to the defendant a plea offer, pursuant to which the defendant would be sentenced to five years, but the defendant decided to take his chances and go to trial, given his belief that the most he would get would be eleven years. <u>Id.</u> at 41-42. The court concluded "that if Day is correct that he was seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming, he received ineffective assistance of counsel." <u>Id.</u> at 44.

In reaching this conclusion, the court emphasized that to be effective, trial counsel must be familiar with the career offender provisions of the Guidelines and how they would impact a client's sentence exposure: "We cannot state precisely what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure. Because the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal

proceedings, *we can say, however, that familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation*." Id. at 43 (emphasis added).

The framework for determining a defendant's career offender status begins with § 4B1.1 of the Sentencing Guidelines. Under that provision, a "career offender" is defined as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

To determine whether a particular prior felony conviction is a "crime of violence" or a "controlled substance" offense so as to support a career offender designation, the Guidelines tell counsel to look to U.S.S.G. § 4B1.2. See U.S.S.G. § 4B1.1(a), comment. (n.1). Under that provision, among other requirements, the prior felony convictions must be "counted separately under the provisions of § 4A1.1(a), (b), or (c)." U.S.S.G. § 4B1.2.

If prior felony convictions fit this definition under § 4B1.2 and the defendant thus falls within the career offender definition, his criminal history category jumps to Category VI in every case, but his offense level can vary (unless he falls within an exception not applicable here). U.S.S.G. § 4B1.1(b). This provision provides a table by

which to calculate an offender's offense level (adjusted for career offender status) based on the offense's statutory maximum. U.S.S.G. § 4B1.1(b). Whichever offense level is higher – the adjusted offense level from the table or the original offense level – is the level attributed to the defendant. U.S.S.G. § 4B1.1(b).

Effective trial counsel fulfilling his duty to be familiar with the definition and implications of career offender status would have been able to follow this framework and determine that Mr. Cobb's criminal history did not qualify him for career offender status. Mr. Cobb had five relevant convictions that trial counsel would have reviewed: (i) a 1991 controlled substance conviction; (ii) a robbery conviction based on a 12/25/1992 arrest; (iii) and (iv) two robbery convictions based on a 12/28/1992 arrest; and (v) a 2006 conviction for possession of cocaine and eluding police. (PSR, ¶¶ 38-52).

Using the 2009 edition of the Sentencing Guidelines Manual, the only conviction that fell under the career offender definition was the robbery conviction based on the 12/25/1992 arrest; none of the other convictions counted. The 1991 conviction did not count because it was too old under U.S.S.G. § 4A1.2(e)(3), and the 2006 conviction did not count because it did not fall under § 4B1.2's definition of a crime of violence or a controlled substance offense. And the two robbery convictions based on a 12/28/1992 arrest did not count under § 4A1.1(a), (b), or (c) – as required by the definition of "two prior felony convictions" in § 4B1.2 – because neither one was a "prior sentence" due to the lack of an intervening arrest and therefore, they both fell under § 4A1.1(f).

Thus, Mr. Cobb was not a career offender, and his trial counsel's failure to properly determine this was unreasonable and – combined with an inaccurate characterization of the government's use of an § 851 notice – resulted in a wildly inaccurate assessment of Mr. Cobb's sentencing exposure. Specifically, trial counsel set forth the following inaccurate information in his May 5, 2010 letter to Mr. Cobb:

> We had talked a little bit about it, but you need at this point to have a clear understanding of your sentencing exposure if you were to go to trial and be convicted.
>
> First off, you are facing a 10-year mandatory sentence for the drugs charged against you in Count One. Distribution of 500-grams or more of cocaine powder results in a mandatory sentence of 5-years. However, since you have a prior drug distribution conviction that mandatory sentence jumps to 10-years.

(Def. Ex. 2). That was inaccurate. The five-year mandatory minimum does not automatically increase to ten years just because of a prior drug distribution conviction – instead, that mandatory minimum *may* increase if the government were to file a § 851 notice. At that point, the government had not filed such a notice, and it is pure speculation whether it would have filed such a notice if Mr. Cobb had pled guilty.

The inaccurate sentencing advice continued:

> In this case, however, your biggest problems are the Federal Sentencing Guidelines. Since you are charged with distributing 500-grams or more of cocaine that would ordinarily call for an offense level under the Guidelines of level 26. However, because of your prior drug felony conviction in 1991 and your robbery conviction in 1992 you are deemed to be, under the Guidelines, a career offender. As you can read, you are a career offender because the instant case is a drug felony and you have prior convictions for "a crime of violence or a controlled substance offense." Since the maximum sentence for Count One for

you is life imprisonment (it would have been only 40-years if you did not have a prior drug distribution conviction) your offense level as a career offender jumps up to level 37 and you automatically jump into criminal history category 6. The combination of an offense level 37 and criminal history category 6 gives you a Guideline Sentence of 360 months to life.

(Def. Ex. 2).

The mistakes in this advice were two-fold. First, trial counsel based his assessment of the maximum sentence of life imprisonment on a flawed application of § 851, and then incorrectly labeled Mr. Cobb a career offender. Those two mistakes worked together to lead to an inaccurate use of the table in U.S.S.G. § 4B1.1(b) to determine Mr. Cobb's offense level as a 37 (when it should have remained a 26) and his criminal history category as VI (when it should have been a V). Thus, at the time of this May 5, 2010, letter, Mr. Cobb thought he was facing 360 months to life if he either pled open or proceeded to trial, when in reality his guideline range was 130 to 162 months.

Trial counsel repeated this inaccurate information in the June 1, 2010, letter, in which he stated (in reference to the § 851 notice which the government had by then filed): "Finally, the government has filed an 'Information Charging Prior Offenses' in which it cites to your two (2) prior convictions for drug distribution. The effect of these prior convictions is to jack up your mandatory minimum upon plea or conviction to ten (10) years. However, more importantly, it jacks up your Federal Sentencing Guideline Range to 360-months to life." (Gov't Ex. 2, June 1, 2010 letter).

Even though the effect of the § 851 notice that had been filed between the date of the first letter and the date of the second letter was indeed to increase the mandatory minimum to ten years, Mr. Cobb's guideline range still was *not* 360 months to life.

As the Day court explained, criminal defense counsel are tasked with the duty of understanding the basic provisions of the sentencing guidelines, including the career offender provision, and failure to accurately apply that provision falls below professional standards.  See also United States v. Smack, 347 F.3d 533, 538 (3d Cir. 2003) ("counsel was obliged to know the Guidelines and the relevant Circuit precedent," even an "opaque and confusing" application note to the U.S. Sentencing Guidelines, and failure to do so was deficient performance). The inaccurate information about Mr. Cobb's sentencing exposure did not enable him make an intelligent decision about whether to plead guilty or proceed to trial; just like the Day court noted, because Mr. Cobb was "seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming, he received ineffective assistance of counsel." Day, 969 F.2d at 42. See also Baker v. Barbo, 177 F.3d 149 (3d Cir.1999) ("we must hold that an attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is ineffective"); Kates v. United States, 930 F. Supp. 189, 192 (E.D. Pa. 1996) (finding counsel's performance deficient because the "attorneys' failure to inform Mr. Kates about his actual sentence exposure was unreasonable.

Absent that vital, bottom-line information, he could not make an intelligent decision about whether to stand trial or accept the government's offer.").

And although it may seem counter-intuitive that overestimating a client's sentencing exposure would not cause prejudice to that client who then decides to proceed to trial and discovers his sentencing range is much less, in this case, as explained below, trial counsel's failure to properly advice Mr. Cobb as to his sentencing exposure did cause significant prejudice to Mr. Cobb and warrants a finding of ineffective assistance of counsel and the granting of relief in the form of vacating his conviction and sentence and remanding the case so that Mr. Cobb can enter a plea of guilty.

### B. Mr. Cobb Suffered Significant Prejudice as a Result of Trial Counsel's Deficient Performance.

In order to satisfy <u>Strickland</u>'s prejudice requirement in the context of a plea, "a defendant must show the outcome of the plea process would have been different with competent advice." <u>Lafler v. Cooper</u>, —— U.S. ——, 132 S. Ct. 1376, 1384 (2012). If a defendant rejects a plea, he must show that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea" and the resulting sentence would have been lower. <u>Id.</u> at 1391; <u>see United States v. Booth</u>, 432 F.3d 542, 546–47 (3d Cir.2005); <u>Baker v. Barbo</u>, 177 F.3d 149, 154–55 (3d Cir.1999). The reasonable probability of any decrease in the petitioner's sentence would

establish prejudice. Smack, 347 F.3d at 540 (citing Glover v. United States, 531 U.S. 198 (2001)).

At the time that Mr. Cobb chose not to plead guilty and instead go to trial, he believed his two options were to plead guilty with cooperation or to proceed to trial. (Pro Se Petition, at 11-13; Tr. Hrg. 11/7/14, at 59-60). Since like the defendant in Booth he did not want to incriminate any co-defendants, including his brother, his only option was to go to trial. Even assuming he understood the third option of pleading open, he believed, based on his trial counsel's inaccurate advice, that he faced a sentence of 360 months to life, whether he pled guilty or proceeded to trial. Because there appeared to be no benefit to pleading guilty, naturally, given those two options, he decided to exercise his constitutional right to go to trial. However, had trial counsel properly advised him on the open plea process, his career offender status, and the proper application of the § 851 notice, Mr. Cobb would have been advised that: (1) his accurate guideline range was only 130 to 162 months; (2) he would get three levels off his offense level for acceptance of responsibility; and (3) the government would not have filed the § 851 notice which increased his mandatory minimum from five years to ten years and increased his maximum penalty from 40 years to life imprisonment. Mr. Cobb stated unequivocally in his pro se petition that had his trial counsel properly advised him about the third option of pleading open and the three levels off his offense level, he

"would have definitely pled guilty in this case, instead of rolling the dice at trial." (Pro Se Petition, at 13).

Moreover, as a result of the evidence presented at trial, Mr. Cobb was held responsible for three kilograms of cocaine, which raised his base offense level from 26 to 28. (PSR, ¶¶ 24-27). However, as explained in Mr. Cobb's objections to the PSR and sentencing memorandum, that trial evidence was unsupported by anything other than suggestions in wiretap conversations; no transactions were proven. If Mr. Cobb had pled guilty before trial, there is a reasonable probability that these conversations would not have been used to increase his base offense level, and his level would have been 26. With a criminal history category of five, and an offense level that originated at 26 but was reduced to 23 for acceptance of responsibility, Mr. Cobb would have been facing a guideline range of 84 to 105 months, with a mandatory minimum of five years. Even if the offense level would have remained at 28, his guideline range would have been 100 to 125 months if Mr. Cobb had pled guilty prior to the government's filing of the § 851 notice.

Thus, even though trial counsel's deficient performance resulted in an over-estimation of Mr. Cobb's sentencing exposure, the inaccurate advice deprived Mr. Cobb of the opportunity to plead guilty with a sentencing exposure of a mandatory minimum of five years and a guideline range of 84 to 105 months (or 100 to 125 months); instead, he was sentenced with an exposure of a mandatory minimum of ten years and a

guideline range of 130 to 162 months. Even assuming the court would have granted an

upward departure in any event, there is a reasonable probability that the sentence that

Mr. Cobb received was significantly longer than the one he would have received had he

pled guilty with competent advice prior to the filing of the § 851 notice. Trial counsel

testified to as much. (Tr. Hrg. 11/7/14, at 30). Therefore, Mr. Cobb was prejudiced as a

result of his counsel's deficient performance.[3]

This Court should grant Mr. Cobb's petition pursuant to 28 U.S.C. § 2255 and

grant relief in the form of vacating the conviction and sentence and remanding so as to

---

[3] See Lafler, 132 S. Ct. at 1391 ("[A]s a result of not accepting the plea and being convicted at trial, respondent received a minimum sentence 3 and a half times greater than he would have received under the plea. The standard for ineffective assistance under Strickland has thus been satisfied."); Riggs v. Fairman, 399 F.3d 1179 (9th Cir.2005) (§ 2254 relief warranted because defense counsel's failure to learn that defendant was exposed to a potential 25-year-to-life sentence as a career offender fell below an objective standard of reasonableness and petitioner's testimony that he would have accepted a plea but for counsel's deficient performance, coupled with the significant discrepancy between the plea and petitioner's exposure, satisfies the prejudice prong); Magana v. Hofbauer, 263 F.3d 542 (6th Cir.2001) (relief warranted under § 2254 where defense attorney's misadvice regarding potential sentencing exposure fell below objective standard of reasonableness and, but for counsel's erroneous advice, there is a reasonable probability that he would have accepted a plea); Mask v. McGinnis, 233 F.3d 132, 142 (2d Cir.2000) (prejudice requirement is satisfied where defendant testifies to his willingness to accept a reasonable plea bargain and a great disparity existed between the sentence exposure at trial and in the plea bargain); United States v. Gordon, 156 F.3d 376, 380 (2d Cir.1998) (whether the government had made a formal plea offer is irrelevant to ineffective assistance claim because the petitioner was prejudiced because he did not have accurate information upon which to make his decision to pursue further plea negotiations or go to trial).

put Mr. Cobb in the same position he would have been had his trial counsel not rendered unconstitutionally infirm advice.

## CONCLUSION

For the foregoing reasons, Petitioner Jonathan Cobb respectfully submits that his claim for relief for ineffective assistance of counsel should be granted, his conviction should be vacated pursuant to 28 U.S.C. § 2255, and a new trial should be ordered.

Respectfully submitted,

Caroline Goldner Cinquanto, Esq.
1500 Market Street, 12th Floor, East Tower
Philadelphia, PA 19102
(267) 639-6904
carrie@cgclegal.com
Attorney for Petitioner Jonathan Cobb

December 22, 2014

CERTIFICATE OF SERVICE

Caroline Goldner Cinquanto, Esquire, hereby certifies that a true and correct copy of Petitioner Jonathan Cobb's Supplemental Brief in Support of Habeas Petition Pursuant to 28 U.S.C. § 2255, was delivered to the following government counsel via the Court's electronic filing system and electronic mail:

Karen S. Marston, Esq.
U.S. Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

Caroline Goldner Cinquanto, Esq.
Counsel for Petitioner Jonathan Cobb

December 22, 2014